**PAINEWEBBER INCORPORATED, Appellant,**

v.

**H. William HOFMANN, Appellee.**

**No. 92–1294.**

United States Court of Appeals, Third Circuit.

Argued June 22, 1992.

Decided Feb. 3, 1993.

Elizabeth H. Fay (argued), Morgan, Lewis & Bockius, Philadelphia, PA, John M. Linsenmeyer, Morgan, Lewis & Bockius, New York City, for appellant.

J. Grant McCabe, (argued), Michael Slotznick, Rawle & Henderson, Philadelphia, PA, for appellee.

Before: BECKER, HUTCHINSON, and ALITO, Circuit Judges.

BECKER, Circuit Judge.

This action was instituted by Paine-Webber Incorporated to stay and enjoin the arbitration of a customer's claims of fraud and mismanagement before the National Association of Securities Dealers, Inc. ("NASD"). Based on the incorporation of § 15 of the NASD Code of Arbitration Procedure ("NASD Code") into the arbitration clause of the "Client's Agreement," Paine-Webber seeks declaratory and injunctive relief barring the arbitration of any claim that arose from an occurrence or event more than six years before the filing of arbitration. PaineWebber contends that because § 15 of the NASD Code is a substantive contractual limitation on what claims the parties have agreed to submit to arbitration, the question of arbitrability is strictly a matter for the court to decide.

The defendant, PaineWebber's former client H. William Hofmann, responds that no portion of his claim in arbitration should be enjoined because the determination of what claims are barred by § 15 of the NASD Code is properly a question for the arbitrators. Hofmann also contends that, regardless of who determines arbitrability, all of his claims arose within the allowable six year period.

The district court granted summary judgment for Hofmann, notwithstanding that certain of Hofmann's claims indisputably arose from occurrences and events that took place more than six years before the filing of arbitration. The court appears to have concluded that at least some of Hofmann's claims arose within the six year period established by § 15 of the NASD Code and that it therefore could not say with positive assurance that the entire claim in arbitration was barred by § 15.

Relying on our opinion in *PaineWebber Inc. v. Hartmann*, 921 F.2d 507 (3d Cir. 1990), in which we addressed language identical to that found in § 15 of the NASD Code, we conclude that the court is the proper body to determine the scope of the arbitration agreement; that PaineWebber is entitled to a declaratory judgment and injunctive relief as to any claim arising out of an occurrence or event that occurred more than six years before the filing of arbitration; and that with regard to at least some of Hofmann's claims, it is indisputable that more than six years passed between the occurrences or events that gave rise to those claims and the filing of Hofmann's claims in arbitration. Accordingly, we will vacate the order granting summary judgment in favor of Hofmann.

While PaineWebber is entitled to summary judgment on some of Hofmann's claims, there are others on which arbitrability is less clear. More particularly, Hofmann has pled a number of claims, such as the allegation that within the six year period the broker advised Hofmann to hold securities purchased more than six years before the arbitration demand, that may or may not be within the scope of the arbitration agreement. PaineWebber responds that these are not independent claims but merely attempts to toll the six year period adopted by the parties as a substantive limit on the claims that will be eligible for arbitration. We cannot decide the arbitrability of the claims on the present record. Accordingly, we will remand to the district court with guidance on further proceedings to determine if these claims are within the scope of the arbitration agreement.

## I.

The relevant facts, most of which are undisputed, may be summarized as follows. In 1977, Hofmann, who had significant assets held mostly in federally-insured cash deposits and conservative stocks, was solicited by one of PaineWebber's Philadelphia brokers. Through this broker, Hofmann began investing in municipal bonds and conservative-to-moderate risk stocks. When the broker died in 1980, PaineWebber assigned Hofmann's account to another of its brokers, Henry J. Faragalli, Jr.

During the course of Faragalli's management of Hofmann's account, Hofmann's investments became more and more concentrated in the stock of a small California electronics company, EECO, Inc. Hofmann's purchase of the EECO stock began in November of 1982 and continued through December of 1987. EECO stock increased in value from 1982 to approximately the middle of 1987. During the months immediately preceding, during, and after the stock market crash of October 1987, however, much of that value was lost. In December of 1987, Faragalli's employment with PaineWebber was terminated.[1] Faragalli was subsequently hired as a

---

1. The facts surrounding Faragalli's departure from PaineWebber are disputed. Hofmann alleges that PaineWebber received numerous complaints about Faragalli's conduct in the weeks and months immediately after the October 1987 crash. PaineWebber allegedly learned from these complaints that Faragalli had placed most of his customers in EECO stock without regard for the suitability of such an investment for these customers, without properly diversifying their portfolios, and often without proper authorization from the customers. According to Hofmann, PaineWebber terminated Faragalli in early December based on this misconduct,

broker by Shearson Lehman Brothers, Inc. Shortly thereafter, Hofmann's brokerage account was transferred to Shearson and assigned to Faragalli. While at Shearson, Hofmann continued to hold his existing shares of EECO stock and to purchase additional shares on margin. The value of the stock, however, continued to decline. Finally, on May 2, 1990, EECO filed for Chapter 11 bankruptcy protection, and the EECO stock held by Hofmann became (and remains) worthless.

On October 30, 1987, Hofmann executed a margin agreement (titled "Client's Agreement") with PaineWebber. Among the terms of the agreement was a provision requiring Hofmann to submit any disputes arising out of the brokerage relationship to one of a listed group of arbitration forums.[2] On October 11, 1991, Hofmann filed a Statement of Claim with the NASD, one of the forums listed in the arbitration agreement.

The Statement of Claim names Faragalli, PaineWebber, and Shearson as respondents and alleges, *inter alia*, that Faragalli was engaged in an ongoing scheme to support the price of EECO stock for his own benefit; that Faragalli abused the accounts of Hofmann and other customers in furtherance of that scheme; that he recommended that Hofmann purchase and hold unsuitably speculative securities (especially EECO stock); that Faragalli executed unauthorized transactions in Hofmann's account; that PaineWebber failed properly to supervise Faragalli; that PaineWebber wrongfully concealed Faragalli's wrongdoing from Hofmann; and that PaineWebber acted wrongfully in allowing Faragalli to cause Hofmann to become and to remain invested in a single, risky security.

Hofmann's arbitration claim also alleges that he (Hofmann) made at least 118 separate purchases of EECO stock. The majority of these purchases occurred before October 11, 1985; i.e., more than six years before the filing of his arbitration claim. Hofmann claims on appeal, however, that all his *losses* can be attributed to "occurrences or events" within six years of the demand for arbitration. In particular, Hofmann points to six types of alleged occurrences or events that he claims occurred within the six year period provided for in § 15 of the NASD Code: (1) certain purchases of EECO stock; (2) repeated, insistent, and wrongful advice by Faragalli to hold all EECO stock; (3) Faragalli's and PaineWebber's active concealment of and affirmative misstatements about the risk to Hofmann's account; (4) Hofmann's discovery in the summer of 1991 that his losses may have been caused by the wrongdoing of others; (5) the continuation of a unitary pattern of wrongdoing with respect to investments in EECO from 1982 through 1987; and (6) the continuation of a wrongful brokerage relation from 1982 through 1987.

In response to the arbitration filing, PaineWebber both denied the claims on the merits and requested that the NASD Director of Arbitration (the "Director") dismiss "any claims relating to purchases prior to September 1985." In the alternative, PaineWebber requested that the Director appoint an arbitration panel to consider its motion to dismiss under § 15 of the NASD Code. In memoranda dated January 27, and February 6, 1992, the NASD advised

but PaineWebber failed to advise Hofmann of the misconduct or of the precarious state of his undiversified and unsuitably risky account. Instead, Hofmann submits, PaineWebber actively concealed this information from him through 1988 and beyond, despite his repeated requests for an explanation for his losses.

2. The arbitration clause provides, in relevant part:

The undersigned agrees, and by carrying an account(s) for the undersigned you agree, that except as inconsistent with the foregoing sentence, all controversies which may arise between the undersigned and you (including your employees and agents) concerning any transaction in any account(s) or the construction, performance or breach of this or any other agreement between us, whether entered into prior, on or subsequent to the date hereof, shall be determined by arbitration. Any arbitration shall be in accordance with the rules in effect of either the New York Stock Exchange, Inc., American Stock Exchange, Inc., National Association of Securities Dealers, Inc., or where appropriate the Chicago Board Options Exchange or National Futures Association, as the undersigned may elect.

the parties that the Director had decided that the motion would be left to the arbitrators hearing the merits. The NASD also notified the parties that it would abide by any properly obtained stay of arbitration.

On February 7, 1992, PaineWebber commenced the present action for declaratory judgment, and a stay of, and an injunction against the arbitration of claims that arose from occurrences or events more than six years before the filing of arbitration. On March 17, 1992, Hofmann moved for summary judgment. On March 31, 1992, Paine-Webber filed both a response to the motion and its own cross-motion for summary judgment. The following day, without giving Hofmann an opportunity to respond to PaineWebber's cross-motion and without oral argument, the district court granted Hofmann's summary judgment motion, setting forth only the following brief explanation:

> I cannot say with positive assurance whether Section 15 of the NASD's Code bars the claim now in arbitration. *Cf. PaineWebber Inc. v. Hartmann*, 921 F.2d 507 (3d Cir.1990).

*PaineWebber Inc. v. Hofmann*, No. 92–CV–0810 (E.D.Pa. Apr. 2, 1992).

This appeal followed, in which Paine-Webber argues that § 15 of the NASD Code, as incorporated into the agreement between the parties, clearly creates a substantive limit on the claims that may be submitted to arbitration, in contrast to a procedural bar such as a statute of limitations. Relying on our opinion in *Paine-Webber Inc. v. Hartmann*, 921 F.2d 507 (3d Cir.1990), PaineWebber argues that it is therefore entitled to an order directing the district court to enter summary judgment in its favor and to grant a declaratory judgment and an injunction prohibiting the arbitration of any claims that arose from an occurrence or event more than six years

before the filing of arbitration. Hofmann responds not only that PaineWebber is not entitled to declaratory and injunctive relief, but also that he is entitled to summary judgment because: (1) any remaining questions of arbitrability are for the arbitrators to decide; and in the alternative, (2) even if the court should decide the arbitrability of the remaining claims, it must find the claims arbitrable since all of them arose from events or occurrence less than six years before the arbitration filing.[3]

The district court's jurisdiction was predicated on diversity of citizenship. 28 U.S.C. § 1331. Our jurisdiction is based on PaineWebber's timely notice of appeal from entry of final judgment. 28 U.S.C. § 1291. Our review of an order granting summary judgment is plenary. *Clement v. Consolidated Rail Corp.*, 963 F.2d 599, 600 (3d Cir.1992). Accordingly, we must examine the issues using the same test applied by the district court: whether there is a genuine issue as to any material fact and whether the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In conducting our analysis, we must view all facts and inferences in the light most favorable to the non-moving party, Paine-Webber. *Clement*, 963 F.2d at 600.

## II.

### A.

An understanding of this case is aided by a brief sketch of the general principles underlying arbitration law. At base, " 'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.' " *AT & T Technologies, Inc. v. Communications Workers of Am.*, 475 U.S. 643, 648, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986) (quoting *United Steel-*

---

**3.** Hofmann also argues that PaineWebber waived the argument that the NASD is without authority to determine the arbitrability of the claims by presenting a motion to dismiss to the Director. This argument is without merit. We have consistently held that "[w]here a party objects to the arbitrability of an issue but nonetheless voluntarily submits the arbitrability issue to arbitration, waiver will not be inferred."

*Pennsylvania Power Co. v. Local Union No. 272*, 886 F.2d 46, 50 (3d Cir.1989); *see also Edward D. Jones & Co. v. Sorrells*, 957 F.2d 509, 514 n. 7 (7th Cir.1992) ("A party's efforts to alert an arbitration panel to its lack of jurisdiction over some of the claims before it is not a waiver of that party's substantive right to have a federal court determine the scope of the arbitrator's jurisdiction.").

*workers of Am. v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960)). Accordingly, " 'whether or not [a party is] bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the Court on the basis of the contract entered into by the parties.' " *Id.* 475 U.S. at 649, 106 S.Ct. at 1419 (quoting *John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 547, 84 S.Ct. 909, 912–13, 11 L.Ed.2d 898 (1964)).

In resolving the arbitrability of particular claims, however, "a court is not to rule on the potential merits of the underlying claims," no matter how frivolous the claims may appear to the court. *Id.,* 475 U.S. at 649, 106 S.Ct. at 1419. Moreover, "there is a presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.' " *Id.* at 650, 106 S.Ct. at 1419 (quoting *Warrior & Gulf,* 363 U.S. at 582–83, 80 S.Ct. at 1352–53). This presumption notwithstanding, "a compelling case for nonarbitrability should not be trumped by a flicker of interpretive doubt." *PaineWebber Inc. v. Hartmann,* 921 F.2d 507, 513 (3d Cir.1990). And "[i]f the court determines that ... the matter at issue clearly falls outside of the substantive scope of the agreement, it is obliged to enjoin arbitration." *Id.* at 511.

### B.

■ In granting Hofmann's motion for summary judgment, the district court stated:

> "I cannot say with positive assurance whether Section 15 of the NASD's Code bars the claim now in arbitration." *Cf. PaineWebber Inc. v. Hartmann,* 921 F.2d 507 (3d Cir.1990).

From the district court's language and its reference to *Hartmann,* it is clear that the court was relying on the general presumption of arbitrability described above. *See Hartmann,* 921 F.2d at 511; *see also AT & T Technologies,* 475 U.S. at 650, 106 S.Ct. at 1419. While the presumption of arbitrability is generally applicable in this case, it is impossible to determine with certainty why the district court thought it entitled Hofmann to summary judgment.

A possible clue to the court's reasoning lies in its reference to "the claim now in arbitration." It appears from this language that the court viewed the dispute as a single, indivisible claim. In light of PaineWebber's admission that at least some of Hofmann's claims arose from occurrences or events within six years of arbitration, the court apparently concluded that since part of Hofmann's claim was within the jurisdiction of the arbitrators, the entire claim had to be submitted to arbitration.

This analysis is flawed, however, in its assumption that there was a single, indivisible claim. Both parties have consistently treated the dispute as comprised of a number of distinct claims, and we know of no reason why the claims submitted to arbitration cannot be treated individually. *See, e.g., Edward D. Jones & Co. v. Sorrells,* 957 F.2d 509 (7th Cir.1992) (affirming the vacatur of ten of the original twelve claims in arbitration). Therefore, summary judgment cannot be affirmed on our reading of the district court's decision.

### C.

■ Hofmann, however, interprets the district court's decision quite differently. According to Hofmann, the district court's decision was based on its interpretation of the contract; *to wit,* that the arbitration clause requires the submission of the claims to the arbitrators to decide if they are barred by § 15 of the NASD Code. PaineWebber responds that this argument is foreclosed by our opinion in *Hartmann.*

In *Hartmann,* we were reviewing a district court's interpretation of Rule 603 of the New York Stock Exchange Department of Arbitration, which had been incorporated by reference into the parties' agreement. 921 F.2d at 509. The district court interpreted Rule 603 to be a substantive bar on the arbitrability of claims. *Id.* at

509–10. Based on this interpretation, the district court concluded that the claims at issue were beyond the jurisdiction of the arbitrators and issued a preliminary injunction staying arbitration. *Id.* On appeal, the question was whether "the district court erred in interpreting Rule 603 as a substantive bar to arbitration instead of a procedural limitation subject to the arbitrator's jurisdiction." *Id.* at 510.

The language of Rule 603 is, in all relevant parts, identical to the language of § 15 of the NASD Code. Both provide:

> No dispute, claim, or controversy shall be eligible for submission to arbitration under this Code where six (6) years have elapsed from the occurrence or event giving rise to the act or dispute, claim or controversy. This section shall not extend applicable statutes of limitations, nor shall it apply to any case which is directed to arbitration by a court of competent jurisdiction.

In *Hartmann*, we analyzed this language and concluded that the district court had not committed clear error in concluding that it was a substantive, contractual bar on what the parties agreed to submit to arbitration. 921 F.2d at 513–14.

Because the district court's interpretation of the contract was a question of fact, we reviewed the decision under a clearly erroneous standard. *Id.* at 510. Accordingly, as Hofmann argues, our decision in *Hartmann* did not necessarily foreclose all contrary interpretations of Rule 603 (and thus of § 15). Relying on our statement that "[t]he two parties offer two plausible interpretations of Rule 603," *id.* at 512, Hofmann contends that the district court's interpretation here was necessarily "plausible" and must be affirmed. We do not agree.

Unlike *Hartmann*, the district court's decision in the present case was made on a motion for summary judgment. Summary judgment may be granted based on the interpretation of a contract only if " 'the contract is so clear that it can be read only one way.' " *Schoch v. First Fidelity Bancorporation*, 912 F.2d 654, 656 (3d Cir. 1990) (quoting *Tigg Corp. v. Dow Corning*

*Corp.*, 822 F.2d 358, 361 (3d Cir.1987)). At a minimum, *Hartmann* establishes that § 15 may be interpreted as a substantive bar to the submission of a claim to arbitration. Even beyond this, we believe that our reasoning in *Hartmann* (though not our express holding) establishes that there is only one reasonable interpretation of § 15; namely, that the language of § 15 unequivocally establishes a substantive limitation on the claims that may be submitted to arbitration.

In his argument, Hofmann places a great deal of emphasis on our statement that "[t]he two parties offer two plausible interpretations of Rule 603. . . ." *Hartmann*, 921 F.2d at 512. In so doing, Hofmann misconstrues the importance of this statement by taking it out of the general context of the opinion. We began the analysis by stating:

> In general terms, the Hartmanns' interpretation of the legal effect of Rule 603 is quite plausible. Indeed, there is abundant precedent holding that time bar clauses in arbitration agreements are essentially procedural in nature and thus should not be interpreted by courts as substantive bars to arbitration.

*Id.* We went on, however, specifically to distinguish the (substantive) language of Rule 603 from the language of those rules that had been held to be procedural in nature:

> [T]he language of Rule 603 stands in stark contrast to that found in the cases cited by the Hartmanns. . . . In *Belke v. Merrill Lynch, Pierce, Fenner & Smith*, 693 F.2d 1023 (11th Cir.1982), for example, . . . [the] language is redolent of a statute of limitations.

*Id.* at 513. Additionally, we concluded that Rule 603 *unambiguously* supports PaineWebber's argument and the district court's conclusion that the parties intended to bar from arbitration disputes raised more than six years after the events giving rise to them.

*Id.* (emphasis added).

 Throughout the *Hartmann* opinion, we stressed the importance of "keeping in mind that arbitration should be compelled

unless it can be said with 'positive assurance' that the agreement to arbitrate does not cover the dispute." *Id.* at 512. We concluded, however, that the interpretation now championed by Hofmann was insufficient to trigger the presumption of arbitrability because "a compelling case for nonarbitrability should not be trumped by a flicker of interpretive doubt." *Id.* at 513; *see also id.* at 514 ("Language less distinct than 'eligible for submission to arbitration' might well be insufficient to overcome the strong jurisprudential pull towards arbitration.").

In light of the strong presumption of arbitrability overcome in *Hartmann,* our statement as to the clear and unambiguous meaning of Rule 603 (which is identical to § 15), and our allusion to a contrary interpretation as a mere "flicker of interpretive doubt," we hold that § 15 can reasonably be read in only one way—as a substantive limit on the claims that the parties have contracted to submit to arbitration. *See Edward D. Jones & Co. v. Sorrells,* 957 F.2d 509, 513 (7th Cir.1992) ("[W]e explicitly held that Section 15, which defines which claims 'shall be *eligible* for submission for arbitration' (emphasis added), *is an eligibility requirement and not a statute of limitations and thus cannot be tolled."* (citing *PaineWebber Inc. v. Farnam,* 870 F.2d 1286, 1292 (7th Cir.1989)).[4]

### D.

■ Hofmann argues in the alternative that even if the court is the appropriate

body to determine arbitrability, the grant of summary judgment should be affirmed because all of his claims arose from occurrences or events within six years of the arbitration demand. While Hofmann has limited his claims on appeal so that they may all arguably involve occurrences or events within the six year period of § 15, his original Statement of Claim in arbitration was not so limited. For instance, Hofmann's Statement of Claim alleges that Faragalli wrongfully induced him to purchase shares of EECO stock. Neither party disputes that each of these purchases may constitute independent claims. Since it is undisputed that most of these purchases occurred more than six years before the arbitration demand, at least some of Hofmann's claims are outside of the six year period provided by § 15 of the NASD Code. PaineWebber is therefore entitled to a declaratory judgment and an injunction barring the arbitration of these claims and any other claims that undisputably arose out of occurrences or events more than six years before the filing of arbitration. *See supra* typescript at [16]; *see also Hartmann,* 921 F.2d 507 (3d Cir.1990).

### E.

In view of the foregoing, Hofmann's argument that he was entitled to summary judgment must be rejected, and the grant of summary judgment vacated. Rather, it

4. Hofmann also argues that *Hartmann* is distinguishable because the arbitration clause here provides for the arbitration of "all controversies which may arise ... concerning any transaction in any account(s) or the *construction,* performance, or breach of this or any other agreement between us" (emphasis added). According to Hofmann, since determining arbitrability is a matter of interpreting the contract, submitting the construction of the contract to arbitration necessarily includes questions of arbitrability.

We disagree. While parties may contract to submit questions of arbitrability to the arbitrators, *see Johnson v. United Food and Commercial Workers, Int'l Union Local No. 23,* 828 F.2d 961, 964 (3d Cir.1987), the contractual language doing so must be clear and unmistakable, *AT & T Technologies,* 475 U.S. at 649, 106 S.Ct. at 1418 ("Unless the parties clearly and unmistakably provide otherwise, the question of whether the

parties agreed to arbitrate is to be decided by the court, not the arbitrator."); *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 583 n. 7, 80 S.Ct. 1347, 1353 n. 7, 4 L.Ed.2d 1409 (1960); *Morristown Daily Record, Inc. v. Graphic Communications Union, Local 8N,* 832 F.2d 31, 33 (3d Cir.1987). The language here is not sufficiently clear and unmistakable to constitute a submission of arbitrability to the arbitrators. *See, e.g., AT & T Technologies,* 475 U.S. at 644–45, 651, 106 S.Ct. at 1416, 1420 (reversing decision that ordered the parties to arbitrate the underlying question of whether the claim could be submitted to arbitration where the arbitration clause provided: "'differences arising with respect to the interpretation of this contract or the performance of any obligation hereunder' must be referred to a mutually agreeable arbitrator...." (citation omitted)).

is PaineWebber that is entitled to relief. However, because the arbitrability of a number of Hofmann's claims cannot be determined on the present record, summary judgment in favor of PaineWebber is not appropriate at this time. We will therefore vacate the judgment and remand to the district court for additional inquiry on those claims about which there is continuing dispute.

### III.

### A.

As discussed above, some of Hofmann's claims clearly fall outside of the six year period provided by § 15 and will therefore be barred from arbitration. Other claims, such as purchases that occurred within the six year period, are clearly arbitrable. There are, however, a number of claims that fall in between and may present analytical difficulties. In particular, Hofmann has identified five types of "occurrences or events" and the causes of action he claims arise out of them: (1) Faragalli's advice to "hold" all EECO stock—each time this advice was given being an actionable occurrence; (2) PaineWebber's active concealment of Faragalli's wrongdoing and of the undue speculative nature of Hofmann's portfolio—the concealment being an independent, actionable wrong; (3) Hofmann's discovery of PaineWebber's and Faragalli's wrongdoing—the date of discovery being the first date on which Hofmann could prevent further injury; (4) the continuation of an integrated pattern of wrongdoing— the fraudulent inducement to buy and hold the EECO stock over the period from 1982 through 1991 constituting a single, ongoing wrong; and (5) the continuation of a wrongful brokerage relationship—the entire brokerage relationship being so tainted with fraud and mismanagement that the relationship itself constitutes a single, actionable wrong.

### B.

PaineWebber has suggested that the district court does not need to resolve the disputes with regard to these particular occurrences or events and the causes of action that are alleged to arise from them. Rather than requesting an order cataloging which claims are and which are not arbitrable, PaineWebber seeks a declaratory judgment and an injunction declaring generally that any claim arising from an occurrence or event more than six years before the filing of arbitration is outside of the arbitrators' jurisdiction and therefore cannot be submitted to arbitration. PaineWebber argues that it is entitled to such an order under *Hartmann* and suggests we simply remand and order the district court to enter summary judgment in its favor. Hofmann, however, opposes our ordering the entry of summary judgment in favor of Paine-Webber because he has never had an opportunity to reply to PaineWebber's motion for summary judgment.

We decline to enter the generalized order sought by PaineWebber. An order telling the NASD arbitrators that they may not arbitrate any claims that arose from occurrences or events more than six years before the filing of arbitration merely tells them what they already know—that they are bound by § 15 of their own Code of Arbitration Procedure. As PaineWebber admitted at oral argument, such an order would not resolve the arbitrability of any particular claim. Thus, if PaineWebber disagrees with the arbitrators' determination as to the arbitrability of a particular claim (*i.e.,* whether a particular claim arose from an occurrence or event within the six year period provided by § 15), it will have to return to court to litigate which claims are arbitrable, the issue presently before us. Arbitration's goal of resolving disputes in a timely and cost efficient manner, as well as judicial economy, counsel against determining arbitrability in the piecemeal fashion suggested by PaineWebber.

Accordingly, we hold that on remand Hofmann should list each specific claim or theory of recovery it plans to assert in arbitration. The district court should then conduct a hearing, with the introduction of extrinsic evidence, if necessary, to determine which of these specific claims are and which are not arbitrable.

## C.

### 1.

Determining the arbitrability of particular claims may not always be easy. The difficulty will usually lie in distinguishing between what is a genuinely asserted cause of action and what is merely a tolling or discovery argument asserted to avoid the six year limitation on the eligibility of claims for arbitration. In distinguishing between these two, the district court will be forced to walk a fine line between two rules of arbitration that are at times in tension with each other.

■ On the one hand, arbitration is a matter of contract, so no party should be forced to arbitrate an issue that it did not agree to submit to arbitration. *See AT & T Technologies*, 475 U.S. at 648, 106 S.Ct. at 1418. Allowing "claims" that are tolling or discovery arguments would permit a party to circumvent the contractual limitation of § 15 and thereby force a party to arbitrate a claim it never agreed to submit to arbitration. The court therefore must enjoin the arbitration of such claims in order to give full effect to the contract.

■ On the other hand, the court is "not to rule on the potential merits of the underlying claims. Whether 'arguable' or not, indeed even if it appears to the court to be frivolous," the merits of an arbitrable claim is for the arbitrators to decide. *AT & T Technologies*, 475 U.S. at 649–50, 106 S.Ct. at 1419; *see also E.M. Diagnostic Sys., Inc. v. Local 169*, 812 F.2d 91, 97 (3d Cir. 1987) ("In essence, we believe the Company's argument reduces to an assertion that its right to subcontract work is so clear on the face of the agreement that there is no need for arbitration. This is but another way of saying that the Union's grievance is frivolous. We are not free to so characterize the Union's position; .... Decisions on the merits, whether easy or difficult, must be left to the arbitrator."). Accordingly, the court must be careful not to characterize what is merely a novel or frivolous theory of recovery as a tolling or discovery argument, as this would take the determi-nation of the merits away from the arbitra-tors. Moreover,

> there is a presumption of arbitrability in the sense that "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage."

*AT & T Technologies*, 475 U.S. at 650, 106 S.Ct. at 1419 (quoting *Warrior & Gulf*, 363 U.S. at 582–83, 80 S.Ct. at 1352–53).

■ At times, it will be impossible to give full effect to both of these goals; there will inevitably be claims that can fairly be characterized as either independent causes of action or as tolling/discovery arguments. In view of the general presumption of arbitrability, *see id.*, the court should, as a benchmark, generally accept a party's statement as to what constitutes a cause of action and permit the arbitration of that claim *as long as* the asserted cause of action is not *clearly* a mere tolling or discovery argument. However, when the stated cause of action is patently nothing more than an attempt to toll the six year period, the court must enjoin the arbitration of that claim.

As an example of how this analysis would work, consider Hofmann's claim that PaineWebber actively concealed Faragalli's wrongdoing. This claim easily could be viewed as an attempt to toll the time period on claims arising out of Faragalli's underlying wrongdoing. At the same time, however, this can also be viewed as an independent cause of action based on a duty owed by PaineWebber to its customers to inform them of a broker's wrongdoing or of the unsuitably speculative nature of their investments. Whether PaineWebber in fact owes such a duty to its customers is a merits question that must be left to the arbitrators. In this type of situation, the court must assume for the purposes of determining arbitrability that such a duty is owed.

The court, however, cannot give a potential claimant in arbitration carte blanche to submit any "claim" it asserts as a separate

cause of action. The court has an obligation to analyze each claim individually to determine whether it can arguably be said to constitute a separate cause of action. For instance, in the present case Hofmann has claimed that the date on which he discovered PaineWebber's and Faragalli's wrongdoing constitutes a separate cause of action. It is clear, however, that this is not even arguably an independent cause of action; it is nothing more than a pure discovery argument. Accordingly on remand, the district court has an obligation to enjoin arbitration of this claim.

In sum, if a claim clearly or arguably states a genuine, independent cause of action (that arises from an occurrence or event within six years of the arbitration demand), it should be submitted to arbitration to allow the arbitrators to determine the merits of the claim; *i.e.*, whether it states a cause of action on which relief may be granted. If, however, the claim is clearly no more than a tolling or discovery argument, the court must enjoin its arbitration.

### 2.

In some cases, there will be a further dispute as to what constitutes the relevant "occurrence or event" that gave rise to the claim or, more frequently, when the occurrence or event took place. If such a dispute does arise, we believe the appropriate guidance for resolving it is provided by *Morristown Daily Record, Inc. v. Graphic Communications Union, Local 8N*, 832 F.2d 31 (3d Cir.1987).

In *Morristown Daily Record*, the dispute between the employer and the union concerned whether the union member who had been referred for a job opening should be classified as an "employee," which would make his non-retention arbitrable, or as an "applicant," which would take the dispute out of arbitration. *Id.* at 34. The district court ordered the parties to arbitrate: (1) on the theory that the union's claim concerned whether the company's decision " 'was properly made in accordance with the limitations of the contract,' "; and (2) because the court believed that it could not resolve the question of arbitrability

without impermissibly ruling on the merits of the underlying dispute. *Id.* at 31–32. On appeal, we reversed and remanded, finding "the issues of arbitrability and the merits to be discrete and independent." *Id.* at 31. We directed the district court that the first step in resolving the dispute was to "determine, by extrinsic evidence if necessary," whether the parties contracted to arbitrate disputes over the proper classification of referred union members. *Id.* at 35. *See also AT & T Technologies*, 475 U.S. at 654–55, 106 S.Ct. at 1421 (Brennan, J., concurring).

The present case is similar. The district court is faced with a necessary threshold determination—whether the occurrence or event giving rise to a particular claim occurred within the six year period provided by § 15. If it did, then the claim is arbitrable; if it did not, then the claim is ineligible for arbitration. It is unclear on the record, however, how the parties intended to resolve disputes over the meaning of "occurrence or event." *See Morristown Daily Record*, 832 F.2d at 34 ("The complication here arises from the failure of the collective bargaining agreement to define the term 'applicant' or to specify the procedure for determining whether to classify an individual as an 'applicant' or as an 'employee.' ").

█ Therefore, as in *Morristown Daily Record*, the first step will be to determine whether the parties intended to submit disputes over the operative occurrence or event, and/or when it occurred, to arbitration. In resolving this question, the court should look to the language of the contract and all relevant extrinsic evidence. *Id.* at 35. In particular, the court may be aided by evidence of the customs and practices in the industry. *Cf. United Steelworkers of Am. v. Warrior and Gulf Navigation Co.*, 363 U.S. 574, 581–82, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960) ("The labor arbitrator's source of law is not confined to the express provisions of the contract, as the industrial common law—the practices of the industry and the shop—is equally a part of the collective bargaining agreement although not expressed in it.").

If the parties intended to submit disputes over what is the relevant occurrence or

event, and/or when it occurred, to arbitration, "the narrow question of [what constitutes the relevant occurrence or event] should be sent to an arbitrator for initial determination." *Morristown Daily Record,* 832 F.2d at 35. If the arbitrators determine that the occurrence or event that gave rise to the particular claim occurred more than six years before the filing of arbitration, their inquiry as to that claim is at an end because they have no jurisdiction to consider it on the merits. If, on the other hand, the arbitrators determine that the occurrence or event was within six years of Hofmann's arbitration demand, the arbitrators should go on to rule on the merits of the claim.

If, in contrast, the district court determines that the parties did not intend to submit disputes over the relevant occurrence or event to arbitration, the court will have to determine what was the relevant occurrence or event and when it occurred. In resolving that issue, the court must again take care "not to rule on the potential merits of the underlying claims," as Hofmann is entitled to have even frivolous claims ruled on by the arbitrators. *AT & T Technologies,* 475 U.S. at 649–50, 106 S.Ct. at 1419; *see also E.M. Diagnostic Sys., Inc. v. Local 169,* 812 F.2d 91, 97 (3d Cir. 1987). Even if the court believes that one or more of Hofmann's claims are meritless, it still has an independent obligation to identify the relevant occurrence or event that would give rise to such a claim if it were cognizable. If the occurrence or event giving rise to that claim is within the six year period established under § 15, then the court must refer the claim to arbitration.

In the present case, it seems unlikely that there will be much debate as to what the operative occurrences or events are or when they occurred. Once it is accepted that a particular alleged cause of action is more than a simple discovery or tolling argument, the relevant occurrence or event and when it occurred (or at least whether it occurred within six years of the filing of arbitration) may be evident. Nevertheless,

since the parties have not had an opportunity to brief these questions and there may be factual disputes to be resolved, we will remand to the district court to allow the parties and the court an opportunity to deal with these questions.[5]

## IV.

For the foregoing reasons, we conclude that it is the court's obligation to determine the scope of the arbitration agreement; that at least some of Hofmann's claims arose from occurrences or events more than six years before the filing of arbitration; and that PaineWebber is entitled to a declaratory judgment and injunctive relief as to those claims. However, because there are a number of issues still outstanding, we do not believe that the entry of summary judgment in favor of Paine-Webber is appropriate at this point. Instead, we will vacate the district court's order granting summary judgment in favor of Hofmann and remand the case to the district court for further proceedings consistent with this opinion.

---

5. As stated, *supra* at [1380–81], Hofmann will have the opportunity on remand to list any additional causes of action he intends to assert in arbitration. Any additional causes of action will, of course, be subject to the analysis described above.