896 F.Supp. 396 (1995)
MERRILL LYNCH, PIERCE, FENNER & SMITH, Plaintiff,
v.
Edward K. MASLAND, Defendant.
No. 4:CV-94-1995.
United States District Court, M.D. Pennsylvania.
August 24, 1995.
*397 C. Clark Hodgson, John J. Murphy, III, Donna M. Dever, Stradley, Ronon, Stevens & Young, Philadelphia, PA, for plaintiff.
Timothy Mark Anstine, Saidis, Guido, Shuff & Masland, Camp Hill, PA, for defendant.

MEMORANDUM
McCLURE, District Judge.

BACKGROUND:
On December 8, 1994, plaintiff Merrill Lynch, Pierce, Fenner & Smith ("Merrill Lynch") initiated this action by filing a complaint seeking injunctive relief against defendant Edward K. Masland. Masland was a customer of Merrill Lynch, a registered securities broker-dealer. Masland filed a statement of claim against Merrill Lynch before the National Association of Securities Dealers, Inc. ("NASD"), alleging improprieties in the manner in which he was induced to make certain investments. Merrill Lynch then filed a complaint in this court seeking to enjoin arbitration of Masland's claims, contending that the claims were not arbitrable.
In a telephone conference between the court and counsel, both sides indicated that NASD had agreed to postpone arbitration proceedings pending a ruling by the court, removing the need for any temporary restraining order or immediate preliminary injunctive relief. On March 20, 1995, the court issued a memorandum and order granting Merrill Lynch's motion for a preliminary injunction. Merrill Lynch, Pierce, Fenner & Smith v. Masland, 878 F.Supp. 710 (M.D.Pa. 1995).
However, we deferred the granting of final relief pending the presentation of further evidentiary matters. These related to the question of whether the parties intended to submit the issue of the relevant "transactions or occurrences" to arbitration, a part of the analysis set forth in PaineWebber Inc. v. Hofmann, 984 F.2d 1372 (3d Cir.1993). The briefs of the parties having been submitted, the matter is ripe for disposition.

DISCUSSION:

I. STATEMENT OF FACTS[1]
Masland became a customer of Merrill Lynch in 1986 and dealt with an employee of Merrill Lynch named William B. Brumley. Brumley recommended investment in a number of limited partnerships, which Masland contends were high-risk ventures. They included:

Investment (Purchase Date) Investment Amount
ML Media Partners, L.P. (3/13/86) $10,000.00
ML Media Partners, L.P. (11/3/86) $40,000.00
SCA Tax Exempt Fund Series II, L.P $50,000.00
 (12/11/86)
ML Venture Partners II, L.P. (3/13/87) $25,000.00
ML Lee Acquisition Fund, L.P. (8/13/87) $20,000.00
Arvida/JMB Partners II, L.P. 89 $20,000.00
 (11/20/89)

The last purchase is no longer at issue, since Masland did not opt out of a class action related to that investment. According to Masland, at the time of his purchases, he did not understand the fundamentals of limited partnerships, and was not made aware of the high-risk nature of the investments.
The investments lost value. Masland filed his statement of claim with NASD on October 7, 1994. He alleged six causes of action: (1) negligence; (2) breach of fiduciary duty; (3) fraud; (4) breach of contract; (5) violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 et *398 seq.; and (6) violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa.Cons.Stat.Ann. §§ 201-1 et seq. On October 25, 1994, NASD demanded that Merrill Lynch answer the statement of claim and execute a submission agreement to the NASD.
Merrill Lynch then initiated this action to enjoin arbitration of Masland's claims.

II. CONTRACTUAL PROVISIONS[2]
The parties agree that the case is governed initially by the terms of the customer agreement and the cash management account agreement between Masland and Merrill Lynch. See Complaint, Exhibit A (customer agreement); Defendant's Brief in Opposition to Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction, Exhibit A (cash management account agreement). Both of those documents indicate that they are governed by the law of the State of New York. Customer Agreement at 2 ¶ 17; Cash Management Account Agreement at 2. The customer agreement sets forth the following language:
Except to the extent that controversies involving claims arising under the Federal securities laws may be litigated, it is agreed that any controversy between us arising out of your business or this agreement shall be submitted to arbitration conducted under the provisions of the Constitution and Rules of the Board of Governors of the New York Stock Exchange, Inc. or pursuant to the Code of Arbitration Procedure of the National Association of Securities Dealers, Inc., as the undersigned may elect....
Customer Agreement at 2 ¶ 13. The cash management account agreement contains substantially the same language. Cash Management Account Agreement at 1.
The NASD Code of Arbitration Procedure (cited hereafter as "NASD Code") provides for a time limitation on the submission of claims for arbitration, which reads:
Time Limitation on Submission
Sec. 15. No dispute, claim, or controversy shall be eligible for submission for arbitration under this Code where six (6) years have elapsed from the occurrence or event giving rise to the act or dispute, claim, or controversy. This section shall [not] extend applicable statutes of limitations, nor shall it apply to any case which is directed to arbitration by a court of competent jurisdiction.
NASD Code § 15 (quoted from Defendant's Brief in Opposition to Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction at 5, which excluded the "not" in ellipses; language added upon review of § 15 as recited in Hofmann, 984 F.2d at 1378.)
As noted, the parties agree that the quoted language applies to and governs this action. It is the significance of the quoted language which is at issue.

III. FORUM
In our earlier memorandum and order, we reviewed each claim raised by Masland for the purpose of determining whether the occurrence or event giving rise to the claim occurred more than six years prior to the filing of the statement of claim. For two of the claims (the first and fourth), all of the events occurred more than six years before the filing of the statement of claim. Those claims therefore are not arbitrable.
A question remained, however, with respect to the other four claims as to what constitutes an "occurrence or event" giving rise to the claims. Only after the relevant occurrence or event is identified can the date of the occurrence or event be determined.
Although the opinion of the Third Circuit in Hofmann is rather difficult to comprehend, the analysis actually is fairly straightforward. In fact, the issue in that case is identical to that faced by this court:
The district court is faced with a necessary threshold determination  whether the occurrence or event giving rise to a particular claim occurred within the six year period provided by § 15. If it did, then the *399 claim is arbitrable; if it did not, then the claim is ineligible for arbitration....
Hofmann, 984 F.2d at 1382.
Unlike the record in that case, however, which was unclear as to how the parties intended to resolve disputes over the meaning of "occurrence or event," id., the record in this case is clear. The contractual provision at issue states that "any controversy between [the parties] arising out of your business or this agreement shall be submitted to arbitration ..." Customer Agreement at 2 ¶ 13.
In this case, Masland's second claim is for breach of fiduciary duty for failing to disclose the risk of the limited partnership investments, and through concealment of the true market value of the investments. This claim is analogous to the example provided in Hofmann:
As an example of how this analysis would work, consider Hofmann's claim that PaineWebber actively concealed Faragalli's wrongdoing. This claim easily could be viewed as an attempt to toll the time period on claims arising out of Faragalli's underlying wrongdoing. At the same time, however, this can also be viewed as an independent cause of action based on a duty owed by PaineWebber to its customers to inform them of a broker's wrongdoing or of the unsuitably speculative nature of their investments. Whether PaineWebber in fact owes such a duty to its customers is a merits question that must be left to the arbitrators. In this type of situation, the court must assume for the purposes of determining arbitrability that such a duty is owed.
Hofmann, 984 F.2d at 1381.
If Merrill Lynch owed Masland a duty to disclose the risk of his investments and actively concealed the high risk nature of the investments during the six year period before the statement of claim was filed, the claim is arbitrable. That is, if the concealment of the risk is an "occurrence or event" giving rise to a claim, then the fact that the statement of claim reflects that the concealment occurred within six years of the filing of the statement of claim makes the claim arbitrable. As described above, the question of whether this duty was owed is a merits question for the arbitrators.
We have determined that "the parties intended to submit disputes over what is the relevant occurrence, and/or when it occurred, to arbitration." Hofmann, 984 F.2d at 1382-1383. The next step is to send to an arbitrator for initial determination the narrow question of whether the alleged ongoing failure to disclose and/or active concealment constitute an occurrence or event giving rise to a claim.
If the arbitrators determine that the occurrence or event that gave rise to the particular claim occurred more than six years before the filing of arbitration, their inquiry as to that claim is at an end because they have no jurisdiction to consider it on the merits. If, on the other hand, the arbitrators determine that the occurrence or event was within six years of [the] arbitration demand, the arbitrators should go on to rule on the merits of the claim.
Hofmann, 984 F.2d at 1383.
In this case, if the arbitrators determine that the failure to disclose/concealment is an occurrence or event giving rise to a claim, since the statement of claim is clear in alleging that this happened within six years of the filing of the statement of claim, the arbitrators necessarily would proceed to rule on the merits of the claim.
The same reasoning applies to each of Masland's other remaining claims. His third claim, for fraud, depends upon whether the furnishing of Masland with monthly statements is an occurrence or event giving rise to a claim. If so, then it occurred within six years of the filing of the statement of claim, according to the statement of claim. Masland's fifth claim, for violation of RICO, also depends upon whether the purported violations of RICO are occurrences or events giving rise to a claim, and when they occurred. Since the same acts which underlie Masland's claims for breach of fiduciary duty and for fraud would form the basis for his sixth claim, for violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, the same analysis must be undertaken with respect to this claim.

*400 IV. CONCLUSION

The terms of the contract between the parties reflect the fact that they have agreed that any controversies between them are subject to arbitration. The question of what constitutes an occurrence or event and when it occurred is a controversy between the parties arising out of the business between them. It is therefore the role of the arbitrators to determine whether the acts alleged by Masland to have taken place within six years of the filing of the statement of claim constitute occurrences or events which give rise to a claim. We therefore will "send," by lifting the stay of arbitration proceedings, the case to the arbitrators to make these threshold determinations. If they determine that the acts in question constitute occurrences or events giving rise to a claim, they should proceed to rule on the merits of any surviving claim.
NOTES
[1] This Statement of Facts is the same as that set forth in our earlier memorandum. There is no real dispute as to these matters.
[2] This section also is the same as that set forth in our earlier memorandum.