**DEAN WITTER REYNOLDS, INC.,**

v.

**Dan A. DRUZ, Appellant.**

No. 01–3890.

United States Court of Appeals,
Third Circuit.

Argued Nov. 5, 2002.

Decided Feb. 27, 2003.

Dan A. Druz (Argued), Manasquan, N.J., Appellant, pro se.

Edward S. Nathan (Argued), Stern Greenberg & Kilcullen, Roseland, N.J., for Appellee.

Before BECKER, Chief Judge, McKEE and HILL,* Circuit Judges.

## OPINION OF THE COURT

BECKER, Chief Judge.

Defendant Dan Druz has appealed from the District Court's grant of summary judgment in favor of plaintiff Dean Witter in its action to enjoin Druz's claim for arbitration before the National Association of Securities Dealers Regulation ("NASDR"). Druz raises a number of contentions on appeal, some of which are without merit. However, because we find that the District Court considered events from the wrong time-period in its determination that Druz's claims are time-barred by NASD § 10304, and that it impermissibly evaluated the merits of Druz's underlying malicious prosecution claim in concluding that it was not arbitrable, we vacate the judgment of the District Court and remand for further proceedings to determine to what extent Druz's claims are time-barred by § 10304.

## I.

This case has a long and complicated history. Druz was an executive for Dean Witter and Branch Manager of the company's Princeton office from 1982–87, where he oversaw several large accounts. In 1987, he left Dean Witter for a job at the securities firm now called Citibank Salomon. After his departure, Dean Witter became involved in a number of disputes with clients whose accounts Druz had managed. One of these disputes led to some highly publicized litigation, in which the New Jersey School Boards Association Insurance Group brought suit against Dean Witter and Druz (the "School Boards" litigation).

Druz faced several actions as a result of the *School Boards* case. The New Jersey Division of Consumer Affairs, Bureau of Securities began an investigation and in January 1992, it made a criminal referral on Druz to the N.J. Division of Criminal Justice. A New Jersey grand jury then returned an indictment against Druz. The criminal case alleged that Druz had transferred losses from one client's securities account into the School Boards account. The case came to an end when Druz petitioned for Pre–Trial Intervention ("PTI"), which was granted, and which he completed in 1998. In addition to this criminal action, Druz was also investigated by the New York Stock Exchange ("NYSE"). In May 1993, the NYSE censured and barred Druz from membership for eight years, a decision that was affirmed by the NYSE's Board of Directors. These decisions were later affirmed by the SEC and by this Court. *Druz v. SEC,* 103 F.3d 112 (3rd Cir.1996).

In April 1995, while Druz's criminal investigation was still ongoing, he filed an arbitration demand against Dean Witter with the NYSE.[1] Dean Witter petitioned

---

* The Honorable James C. Hill, United States Circuit Judge for the Eleventh Circuit Court of Appeals, sitting by designation.

1. Druz asserted 12 claims against Dean Witter, all of which he argues were based on actions engaged in during the period 1992–95. These claims were (1) violations of 42

the District Court for the District of New Jersey to bar the matter going forward at the NYSE. The District Court held that the arbitration on the malicious prosecution claims could not go forward until the New Jersey criminal case was resolved. The Court also permanently enjoined Druz from arbitrating any claims that arose from conduct that had occurred more than 6 years previous to his filing the arbitration claim.

In 1999, Druz filed a demand for arbitration with NASDR, the arbitration arm of the National Association of Securities Dealers ("NASD"). Dean Witter sought to have these proceedings enjoined as well. The District Court denied this motion, holding that it did not retain jurisdiction over the matter because the underlying litigation had long since closed. In addition, the Court ruled that its 1995 order enjoining the NYSE arbitration had no bearing on the NASD arbitration.

Dean Witter subsequently filed a second suit in the District of New Jersey to enjoin the NASD arbitration. The District Court held that because the claim for arbitration was filed on Feb. 23, 1999, the NASD's six-year time-bar rule would only allow for arbitration of claims springing from conduct on or after Feb. 23 1993. The Court believed that Druz wanted to arbitrate matters concerning his criminal prosecution and ruled that all matters concerning Druz's employment at Dean Witter, spanning the years 1982–87, were time-barred. The Court concluded that "any surviving allegations ... ultimately sound in malicious prosecution" and noted fatal problems with Druz's malicious prosecution claim. First, the criminal action was not

instituted by Dean Witter, even if it brought the matter to the attention of the authorities. Second, the prosecution did not seem to end in Druz's favor, because he entered into a PTI agreement. Because the Court found no merit in Druz's malicious prosecution claim and determined that all of Druz's other claims were time-barred, it enjoined Druz's arbitration before the NASD. Druz then moved for re-argument, which the District Court rejected because Druz did not provide the court "with matters of fact or law that were put forth to the Court but not considered." In addition, the Court held that Druz's motion sought to present new arguments, which is impermissible under local rule 7.1(g). Druz then filed an Amended Motion for Re-argument, which was time-barred because it was filed more than 10 days after the entry of the order on the original motion. This appeal followed.

## II.

Druz raises a myriad of issues on appeal. He begins by arguing that the District Court lacked jurisdiction to make its decision and that the case was heard in the wrong venue. Druz then submits that if the District Court did have jurisdiction and was the proper venue, the parties had a valid agreement to arbitrate and none of his claims are time-barred by the NASD's six-year limit on arbitration of claims. In support of this position, Druz argues that all his claims stem from events that occurred in the period 1992–95 and that under NASD § 10307 the 1995 District Court proceeding tolled the six-year limit. In addition, Druz asserts that under § 10307,

USC § 1985(2); (2) violations of 18 USC § 1964(c) ("RICO"); (3) causing a wrongful prosecution against Druz in New Jersey; (4) unlawful common law conspiracy; (5) wrongful interference with Druz's prospective economic advantage; (6) negligence; (7) negli-

gent infliction of emotional distress; (8) fraud; (9) unfair trade practices; (10) breach of fiduciary and contractual duties, and duties of fair dealing; (11) prima facie tort; and (12) attorney malpractice.

the 1995 proceeding tolled every other applicable statute of limitations as well. Next, Druz contends that the District Court impermissibly considered the merits of his underlying claims when it ruled that one such claim sounds in malicious prosecution and that Druz would not be able to prove the elements of that cause of action. In sum, Druz asserts that none of his claims are time-barred and that therefore he is entitled to arbitration as per his agreement with Dean Witter.

Dean Witter counters that because Druz did not raise his jurisdictional, joinder, and venue arguments before the District Court granted the motion for summary judgment, he may not raise them on appeal. Dean Witter also asserts that "virtually all, if not all, of Druz's allegations" are time-barred by the NASD's six-year eligibility requirement, and that if any of Druz's allegations survive the time-bar, these claims may not be arbitrated because they relate to privileged testimony by Dean Witter employees. In addition, Dean Witter urges that any surviving claims sound in malicious prosecution, a cause of action on which Druz cannot prevail. Finally, Dean Witter argues that the statutes of limitations have run on all of Druz's claims.

We exercise plenary review over the District Court's grant of summary judgment, *Chisolm v. McManimon,* 275 F.3d 315, 321 (3rd Cir.2001), over the question whether the District Court had jurisdiction to hear this case, *Okereke v. United States,* 307 F.3d 117, 119–20 (3rd Cir.2002), and over the District Court's determination whether a party's joinder is necessary under Rule 19(a). *Koppers Co. v. Aetna Casualty,* 158 F.3d 170, 174 (3rd Cir.1998). We have jurisdiction under 28 U.S.C. § 1291.

## A.

We begin with the threshold question whether the District Court had jurisdiction to hear this case. First, we must consider Dean Witter's argument that we cannot address this question because it was raised for the first time in Druz's motion for reconsideration, rather than during the summary judgment proceeding. It is a general rule that this court will not hear issues for the first time on appeal. *Singleton v. Wulff,* 428 U.S. 106, 120, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976); *Krysztoforski v. Chater,* 55 F.3d 857, 860–61 (3rd Cir.1995). There is an exception to this general rule, however, for jurisdictional issues.

Druz points out, correctly, that the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.,* does not create independent federal question jurisdiction. As the Supreme Court held in *Moses H. Cone Memorial Hospital v. Mercury Const. Corp.,* 460 U.S. 1, 25 n. 32, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), "Section 4 [of the Act] provides for an order compelling arbitration only when the federal district court would have jurisdiction over a suit on the underlying dispute; hence, there must be diversity of citizenship or some other independent basis for federal jurisdiction...." Considering the current parties to this case, Dean Witter, a Delaware corporation with its principal place of business in New York and Druz, a resident of New Jersey, there is diversity jurisdiction. Druz argues, however, that a number of indispensable parties were not joined to the proceedings. He asserts that because these individuals are residents of New Jersey, the District Court would not have had diversity jurisdiction had they been joined. These individuals are current and former Dean Witter employees who Druz claims were involved in the fraud and deception that led to him being blamed for Dean

Witter's troubles in the late 1980s. Druz named these individuals in the underlying arbitration and argues that they are indispensable parties to this litigation.

■ We look to Federal Rule of Civil Procedure Rule 19 in order to evaluate Druz's argument. Subdivision (a) requires that an individual be joined as a party if "(1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest." Subsection (a)(1) does not apply here: there is no reason that complete relief cannot be accorded Druz or Dean Witter in the absence of these other individuals. Subsection (a)(2)(ii) also does not apply: neither Druz nor Dean Witter would be subject to multiple or inconsistent obligations because of the absence of these parties. The only subsection that might conceivably apply is (a)(2)(i), but, if Dean Witter wins, these other individuals' ability to protect their interests will not be impaired. If Druz wins then it is likely that he would win in a separate action on the same facts against these other individuals, but, even if Druz wins, nothing in this litigation will necessarily impair these other individuals' ability to protect their inter-

ests. As a result, these individuals need not be joined and diversity is preserved.[2]

### B.

We turn to the question of whether the District Court properly enjoined the arbitration. In granting summary judgment, the Court reasoned that most of Druz's claims are time-barred by NASD § 10304 and that any that are not sound in malicious prosecution, a claim upon which Druz cannot prevail. We first consider the time-bar issue.

■ Dean Witter argues that arbitrability of Druz's claim was a question for the District Court and that the Court properly decided that question. In *PaineWebber v. Hartmann*, 921 F.2d 507 (3rd Cir.1990), we held that the question whether a claim is arbitrable when that claim may be barred by the arbitrating organization's time limits is properly resolved in Federal Court, rather than by the arbitrator. NASD § 10304 states that "No dispute, claim, or controversy shall be eligible for submission to arbitration under this Code where six (6) years have elapsed from the occurrence of the event giving rise to the act or dispute, claim or controversy." Dean Witter argues that "virtually all, if not all" of Druz's allegations stem from events that occurred more than six years before he filed for arbitration, and that therefore his claims are not arbitrable. *Hartmann* makes it clear that, if Dean Witter is correct about when the critical actions took place, barring some kind of tolling, the District Court properly granted

---

**2.** Druz also argues that the case was heard in the wrong venue and that because the underlying arbitration is to take place in New York, the proper venue is the Southern District of New York. Because Druz raised this issue for the first time after the Summary Judgment hearing, however, he waived it. *See* 15 Charles Alan Wright & Arthur R. Miller, Fed-

eral Practice and Procedure § 3826 at 257 (2d ed. 1995). We note that had Druz raised this issue at the proper juncture, he would likely have prevailed on this point, for it appears that this case should have been heard in the Southern District of New York, the district where the arbitration is to take place. *See Bao v. Gruntal*, 942 F.Supp. 978 (D.N.J.1996).

summary judgment because Druz's claims are not arbitrable under NASD rules.

The parties disagree about when the critical events took place. Druz filed his NASD arbitration claim on February 23, 1999, and so the critical date for purposes of the NASD time-bar is February 23, 1993.[3] The District Court held that the key events took place in the period 1982–1987 when Druz was working at Dean Witter. Druz's arbitration claims are not based on events that occurred when he was at Dean Witter, however, but rather on events that occurred when Dean Witter became involved in the various investigations of Druz's activities. These events took place right around the February 1993 cutoff date. It is difficult to tell from the record if the claims springing from these events are time-barred. For example, Druz claims that Dean Witter "coordinated my prosecution by the Division of Enforcement of the NYSE" and that "during the relevant time period, Dean Witter fabricated four client complaints against me that formed the cornerstone of the NYSE prosecution." The NYSE handed down its de-cision on May 28, 1993, but it is not clear from the record whether the actions Druz complained about occurred before or after Feb. 23 1999. It is clear that all of the appeals of the NYSE decision occurred after the critical date[4] and to the extent that these affirmances were based on alleged forgeries and perjured testimony, perhaps this part of the complaint is not time-barred.[5]

The New Jersey criminal investigation began in January of 1992. Much of Dean Witter's involvement in the case occurred during 1992 and claims based on these events are time-barred. However, the case continued past February of 1993 and it is not clear from the record if any actions challenged by Druz occurred after that point.

■■■ Druz argues that because it is unclear when the challenged events occurred, "the matter should be remanded to the district court with instructions to hear additional evidence on the issue of the relevant dates alleged in the arbitration pleadings pursuant to Fed.R.Civ.P. 56."[6]

---

3. Druz disputes this date as well. He asserts that the (undated) arbitration claim was submitted on January 13, 1993. The District Court adopted the later date. For reasons described below, this dispute has no impact on the outcome before this Court.

4. The NYSE Board of Directors affirmed the decision on June 2, 1994. The SEC affirmed in 1995.

5. Dean Witter argues that Druz raised these issues for the first time on appeal, but in fact he raised them, if obliquely, in his 1999 NASDR arbitration claim.

6. Druz also argues, in the alternative, that § 10307 of the NASD code, which he claims tolls "all applicable statutes of limitation and jurisdictional rules" applies here. § 10307 tolls the time limitations under two circumstances: (1) "where a duly executed Submission Agreement is filed by the Claimant(s)"; and (2) "when the parties have submitted the dispute, claim or controversy to a court of competent jurisdiction. The six year time limit shall not run for such period as the court shall retain jurisdiction upon the matter submitted."

Druz argues that both circumstances apply to his case. First, he asserts that he filed a submission agreement which tolled the time limitations when he filed the NYSE arbitration claim in March 1995. This argument carries no weight. Druz is urging that his filing of a claim with the NYSE should toll the NASD's time limitations. However, § 10307 of the NASD code is intended to toll the time limitation when a submission is made to the NASD, not to another organization.

Druz also submits that the time limitation was tolled when the District Court asserted jurisdiction over the conflict in 1995. The question is, was Dean Witter's suit to enjoin the NYSE arbitration tantamount to submitting the "dispute, claim, or controversy to a court of competent jurisdiction"? NASD

To the extent that Druz's claims are not barred on other grounds, we agree, and hold that the District Court must address the question of whether all of Druz's claims are time-barred.

■ Having addressed the NASD § 10304 time-bar issue, we turn our attention to the District Court's determination that any remaining claims sound in malicious prosecution, a cause of action upon which Druz could not prevail. Druz argues that it was impermissible for the District Court to consider the merits of his underlying arbitration claim in its decision on Dean Witter's motion for summary judgment. As suggested above, we agree. In *PaineWebber v. Hofmann* we held that "[i]n resolving the arbitrability of particular claims . . . 'a court is not to rule on the potential merits of the underlying claims,' no matter how frivolous the claims may appear to the court." 984 F.2d 1372, 1377 (3d Cir.1993) (quoting *AT & T Technologies v. Communications Workers of America*, 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986)). The court's role, according to *Hofmann*, is simply to determine whether the dispute is arbitrable, not which party would win in the arbitration itself. *Hofmann*, 984 F.2d. at 1377. In other words, a court can only enjoin the arbitration if " 'the matter at issue clearly falls outside of the substantive scope of the [arbitration] agreement.' " *Id.* (quoting *PaineWebber v. Hartmann*, 921 F.2d at 511). The District Court's analysis of the malicious prosecution claim was therefore not a proper ground for granting summary judgment against Druz.[7]

### III.

Because the District Court erred in considering events from the wrong time period in determining that the bulk of Druz's claims for arbitration was barred under NASD § 10304 and in evaluating the merits of Druz's remaining underlying claims, we will vacate the judgment of the District Court and remand for further proceedings to determine to what extent Druz's claims are barred under § 10304. Costs shall be borne 2/3 by Dean Witter and 1/3 by Druz.

§ 10307. We think the answer is no. This section of the NASD code is designed to toll the time limit when a claim that otherwise would be arbitrated with the NASDR is being addressed in a judicial proceeding. The 1995 controversy in front of the District Court, however, was about whether Druz could get NYSE arbitration, not about NASD arbitration; therefore § 10307 does not act here to toll the six-year time bar of § 10304, and all claims stemming from events that occurred before February 23, 1993 are time-barred.

7. Dean Witter also argues that even if some of Druz's claims are not barred by NASD § 10304, they are barred by their own statutes of limitation. The issue of whether these individual claims are barred by their statutes of limitation, however, goes to the merits of Druz's claims and is for the arbitrator, not the courts to decide. Dean Witter also argues that it is cloaked in both absolute and qualified litigation privileges as a result of its employees' cooperation with the grand jury investigation. This argument is unavailing both because it goes to the merits of Druz's claims and therefore is not properly before us, and because we see no case law (and Dean Witter has pointed to none) which stands for the proposition that privileges that might protect Dean Witter's employees extend to Dean Witter itself.