**MERRILL LYNCH, PIERCE, FENNER & SMITH, Plaintiff,**

v.

**Edward K. MASLAND, Defendant.**

No. 4:CV–94–1995.

United States District Court, M.D. Pennsylvania.

March 20, 1995.

potential liability until after the "single site of employment" issue has been decided.

John J. Murphy, III, C. Clark Hodgson, Jr., Donna M. Dever, Stradley, Ronon, Stevens & Young, Philadelphia, PA, for plaintiff.

Timothy Mark Anstine, Saidis, Guido, Shuff & Masland, Camp Hill, PA, for defendant.

## MEMORANDUM

McCLURE, District Judge.

### BACKGROUND:

On December 8, 1994, plaintiff Merrill Lynch, Pierce, Fenner & Smith ("Merrill Lynch") initiated this action by filing a complaint seeking injunctive relief against defendant Edward K. Masland. Masland was a customer of Merrill Lynch, a registered securities broker-dealer. Masland filed a statement of claim against Merrill Lynch before the National Association of Securities Dealers, Inc. ("NASD"), alleging improprieties in the manner in which he was induced to make certain investments. Merrill Lynch then filed a complaint in this court seeking to enjoin arbitration of Masland's claims, contending that the claims were not arbitrable.

In a telephone conference between the court and the parties, both sides indicated that NASD had agreed to postpone arbitration proceedings pending a ruling by the court, removing the need for any temporary restraining order or immediate preliminary injunctive relief. Before the court at this time is Merrill Lynch's motion for a preliminary injunction which, in its reply brief, Merrill Lynch indicates is now a motion for a permanent injunction.

### DISCUSSION:

#### I. STATEMENT OF FACTS

Masland became a customer of Merrill Lynch in 1986 and dealt with an employee of Merrill Lynch named William B. Brumley. Brumley recommended investment in a number of limited partnerships, which Masland contends were high-risk ventures. They included:

| Investment (Purchase Date) | Investment Amount |
| --- | --- |
| ML Media Partners, L.P. (3/13/86) | $10,000.00 |
| ML Media Partners, L.P. (11/3/86) | $40,000.00 |
| SCA Tax Exempt Fund Series II, L.P. (12/11/86) | $50,000.00 |
| ML Venture Partners II, L.P. (3/13/87) | $25,000.00 |
| ML Lee Acquisition Fund, L.P. (8/13/87) | $20,000.00 |
| Arvida/JMB Partners II, L.P. 89 (11/20/89) | $20,000.00 |

The last purchase is no longer at issue, since Masland did not opt out of a class action related to that investment. According to Masland, at the time of his purchases, he did not understand the fundamentals of limited partnerships, and was not made aware of the high-risk nature of the investments.

The investments lost value. Masland filed his statement of claim with NASD on October 7, 1994. He alleged six causes of action: (1) negligence; (2) breach of fiduciary duty; (3) fraud; (4) breach of contract; (5) violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 et seq. On October 25, 1994, NASD demanded that Merrill Lynch answer the statement of claim and execute a submission agreement to the NASD.

Merrill Lynch then initiated this action to enjoin arbitration of Masland's claims.

#### II. CONTRACTUAL PROVISIONS

The parties agree that the case is governed initially by the terms of the customer agreement and the cash management account agreement between Masland and Merrill Lynch. *See* Complaint, Exhibit A (customer agreement); Defendant's Brief in Opposition to Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction, Exhibit A (cash management account agree-

ment). Both of those documents indicate that they are governed by the law of the State of New York. Customer Agreement at 2 ¶ 17; Cash Management Account Agreement at 2. The customer agreement sets forth the following language:

> Except to the extent that controversies involving claims arising under the Federal securities laws may be litigated, it is agreed that any controversy between us arising out of your business or this agreement shall be submitted to arbitration conducted under the provisions of the Constitution and Rules of the Board of Governors of the New York Stock Exchange, Inc. or pursuant to the Code of Arbitration Procedure of the National Association of Securities Dealers, Inc., as the undersigned may elect. . . .

Customer Agreement at 2 ¶ 13. The cash management account agreement contains substantially the same language. Cash Management Account Agreement at 1.

The NASD Code of Arbitration Procedure (cited hereafter as "NASD Code") provides for a time limitation on the submission of claims for arbitration, which reads:

**Time Limitation on Submission**

**Sec. 15.** No dispute, claim, or controversy shall be eligible for submission for arbitration under this Code where six (6) years have elapsed from the occurrence or event giving rise to the act or dispute, claim, or controversy. This section shall [not] extend applicable statutes of limitations, nor shall it apply to any case which is directed to arbitration by a court of competent jurisdiction.

NASD Code § 15 (quoted from Defendant's Brief in Opposition to Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction at 5, which excluded the "not" in ellipses; language added upon review of § 15 as recited in *PaineWebber Inc. v. Hofmann*, 984 F.2d 1372, 1378 (3d Cir. 1993)).

As noted, the parties agree that the quoted language applies to and governs this action. It is the significance of the quoted language which is at issue.

## III. FORUM

■ Under the law of the Third Circuit, it is clear that the court, as opposed to the arbitrators, determines whether a claim is arbitrable. In *PaineWebber Inc. v. Hofmann, supra*, the Third Circuit held that NASD Code § 15 is a substantive bar to arbitration, and relied on its earlier decision in *PaineWebber Inc. v. Hartmann*, 921 F.2d 507 (3d Cir.1990), to conclude that the court is the proper forum for such a determination. *Hofmann*, 984 F.2d at 1374. Masland contends, however, that the law of New York governs pursuant to the choice of law clauses in the contract.

■ In *Hartmann*, the district court relied upon the Pennsylvania Uniform Arbitration Act. 921 F.2d at 510 n. 3. The Third Circuit pointed out that this reliance was erroneous, *id.*, and that the Federal Arbitration Act, 9 U.S.C. §§ 1 et seq., governs arbitrability of a transaction involving interstate commerce. 921 F.2d at 510 (citing, *inter alia*, 9 U.S.C. § 2; *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)). It should also be noted that, in citing *Moses H. Cone*, the Third Circuit quoted the Supreme Court for the proposition that 9 U.S.C. § 2 creates a body of federal substantive law of arbitrability. *Id.* (quoting *Moses H. Cone*, 460 U.S. at 24, 103 S.Ct. at 941). Thus, state law is inapplicable; to the extent that the contract purports to establish New York law as controlling the issue of arbitrability, the contract language is preempted by the Federal Arbitration Act. In this Circuit, *Hartmann* embodies the "federal substantive law of arbitrability." *See also Mastrobuono v. Shearson Lehman Hutton, Inc.*, —— U.S. ——, ———–——, 115 S.Ct. 1212, 1218–21, 131 L.Ed.2d 76 (U.S.1995) (interpreting substantially similar provisions of customer contract with securities dealer-broker, Supreme Court held that arbitration clause governs authority of arbitrators while choice-of-law provision governs substantive rights and duties of the parties; any other reading of the provisions is "untenable," even when they appear together in the contract).

In short, under *Hartmann* and as supported by the reasoning in *Mastrobuono*, the

arbitrators do not have the authority to determine the arbitrability of claims presented, and this court is the proper forum for a determination of the arbitrability of Masland's claims.

## IV. STANDARD GOVERNING ISSUANCE OF A PRELIMINARY INJUNCTION

■ Fed.R.Civ.P. 65 provides for the issuance of preliminary injunctions. In this Circuit,

> At the trial level, the party seeking a preliminary injunction bears the burden of producing evidence sufficient to convince the court that (1) the movant has shown a reasonable probability of success on the merits; (2) the movant will be irreparably injured by denial of relief; (3) granting preliminary relief will not result in even greater harm to the other party; and (4) granting preliminary relief will be in the public interest....

*ECRI v. McGraw–Hill, Inc.,* 809 F.2d 223, 226 (3d Cir.1987) (citation omitted).

Regarding the element of irreparable injury, the harm must be imminent and of such a nature that money damages alone cannot atone for it. *Id.*

■ Of course, extensive analysis under this standard is unnecessary because

> [i]f a court determines that a valid arbitration agreement does not exist or that the matter at issue clearly falls outside of the substantive scope of the agreement, it is obliged to enjoin arbitration. If, on the other hand, the court determines that an agreement exists and that the dispute falls within the scope of the agreement, it then must refer the matter to arbitration without considering the merits of the dispute....

*Hartmann,* 921 F.2d at 511 (citations omitted). *See also Hartmann,* 921 F.2d at 514–515 (discussing standard for preliminary injunction). Neither party contends that the arbitration agreement is invalid; it only remains, then, to determine whether the matters presented by Masland's statement of claim fall within the substantive scope of the agreement.

## V. EFFECT OF NASD CODE § 15

Under *Hartmann* and *Hofmann,* NASD Code § 15 is a substantive limitation on arbitrability. The question, then, is whether the individual claims raised by Masland fall outside the scope of arbitration due to the operation of NASD Code § 15.

The relevant language is set forth in full above. In short, a claim is eligible for arbitration only if a statement of claim is filed within six years since the "occurrence or event giving rise" to the claim. Masland filed his statement of claim on October 7, 1994, so that all of the events giving rise to his claims must have occurred after October 7, 1988.

■ Masland's first claim is for negligence in failing to recommend proper investments. Complaint, Exhibit B at 4–5. The events which led to Masland's various investments occurred more than six years before the filing of the statement of claim, the purchases themselves having occurred more than six years previously.

Masland's second claim is for breach of fiduciary duty through the failure to disclose to Masland the risk of the limited partnership investments, and through concealment of the true market value of the investments. The problem here is that the event at issue is conduct on the part of Brumley, the Merrill Lynch employee, which allegedly occurred over a period of time, rather than a single, distinct-in-time event. *See Hofmann,* 984 F.2d at 1380. In *Hofmann,* the Third Circuit addressed this issue by directing the district court to consider evidence of the parties' intent as to whether such on-going conduct was intended to be subject to arbitration when it occurred during a period of time both during and prior to the six-year period prescribed by NASD Code § 15. *Hofmann,* 984 F.2d at 1381–1383. We also will undertake such an analysis.

Masland's third claim is for fraud. He contends that Merrill Lynch, through Brumley, misrepresented the value of the investments, and that this overstatement of the value continued through furnishing Masland with monthly statements, which in turn in-

duced Masland to continue holding his investments. Again, this claim involves conduct over a period of time, subject to examination as is the claim for breach of fiduciary duty.

Masland's fourth claim is for breach of contract, and involves the advice which led to his investment purchases. The conduct at issue was prior to the six-year period prescribed by NASD Code § 15.

■ Masland's fifth claim is for violation of RICO. He contends that he was injured by the use or investment of income derived from a pattern of racketeering activity in an enterprise engaged in interstate commerce. 18 U.S.C. § 1962(a). Masland also contends that he was injured by Merrill Lynch's acquisition of an enterprise engaged in interstate commerce. 18 U.S.C. § 1962(b). His claim is asserted pursuant to 18 U.S.C. § 1964(c). Claims under RICO may be the subject of arbitration. *Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987). The statement of claim does not state specifically when Masland was injured by Merrill Lynch's alleged violation of RICO. However, it does recite alleged injuries occurring within the six-year period prescribed by NASD § 15. *See* discussion of claim for breach of fiduciary duty, above. Further review is necessary in relation to this claim.

■ Masland's sixth claim is for violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa.Stat. Ann. §§ 201–1 et seq. The same acts which underlie Masland's claims for breach of fiduciary duty and fraud may constitute acts which will support a claim under this Law. *See generally* 73 Pa.Stat.Ann. §§ 201–2(4), 201–3, 201–3.1. The Law applies to securities brokers. *Denison v. Kelly,* 759 F.Supp. 199, 202–205 (M.D.Pa.1991). Again, this claim overlaps, with respect to the event in question, with the claims for breach of fiduciary duty and for fraud. Since those claims may be based upon events occurring within the six-year period prescribed by NASD § 15, further consideration is necessary.

## VI. FURTHER PROCEEDINGS

Based upon Masland's statement of claim, enjoining his claims for negligence and breach of contract appears appropriate. Further consideration of his claims for breach of fiduciary duty, fraud, and violations of RICO and the Pennsylvania Unfair Trade Practices and Consumer Protection Law is necessary.

The manner in which the issues are presented to the court and considered by the court are set forth in *Hofmann.* Relying upon *Morristown Daily Record, Inc. v. Graphic Communications Union, Local 8N,* 832 F.2d 31 (3d Cir.1987), the Third Circuit set forth the order in which the issues and sub-issues should be considered. It stated:

... [T]he first step will be to determine whether the parties intended to submit disputes over the operative occurrence or event, and/or when it occurred, to arbitration. In resolving this question, the court should look to the language of the contract and all relevant extrinsic evidence.... In particular, the court may be aided by evidence of the customs and practices in the industry....

If the parties intended to submit disputes over what is the relevant occurrence or event, and/or when it occurred, to arbitration, 'the narrow question of [what constitutes the relevant occurrence or event] should be sent to an arbitrator for initial determination' ... If the arbitrators determine that the occurrence or event that gave rise to the particular claim occurred more than six years before the filing of arbitration, their inquiry as to that claim is at an end because they have no jurisdiction to consider it on the merits. If, on the other hand, the arbitrators determine that the occurrence or event was within six years of Hofmann's arbitration demand, the arbitrators should go on to rule on the merits of the claim.

If, in contrast, the district court determines that the parties did not intend to submit disputes over the relevant occurrence or event to arbitration, the court will have to determine what was the relevant occurrence or event and when it occurred. In resolving that issue, the court must

again take care 'not to rule on the potential merits of the underlying claims,' as Hofmann is entitled to have even frivolous claims ruled on by the arbitrators.... Even if the court believes that one or more of Hofmann's claims are meritless, it still has an independent obligation to identify the relevant occurrence or event that would give rise to such a claim if it were cognizable. If the occurrence or event giving rise to that claim is within the six year period established under § 15, then the court must refer the claim to arbitration. *Hofmann*, 984 F.2d at 1382–1383. The basic distinction to be made is whether the claim is actually a cause of action and not simply a "discovery or tolling argument." *Hofmann*, 984 F.2d at 1383.

We have determined that at least some of the events or occurrences in question are outside the scope of the arbitration clause due to the operation of NASD Code § 15. The remainder of the events or occurrences in question are subject to analysis under *Hofmann*. Pursuant to both *Hofmann* and *Hartmann*, then, Masland will be enjoined from pursuing his claim in arbitration pending final resolution of this matter, i.e. pending completion of the *Hofmann* analysis. A preliminary injunction will issue.

Under *Hofmann*, the first step is to determine whether the parties intended to present to arbitration disputes over what are the relevant "events or occurrences," and/or when they took place.

"In resolving this question, the court should look to the language of the contract and all relevant extrinsic evidence," *Hofmann*, 984 F.2d at 1382, necessitating an evidentiary hearing. *Id.* at 1380. See, also, *Manasse v. Prudential–Bache Securities*, 840 F.Supp. 42, 45–46 (W.D.Pa.1993).

The court will, therefore, schedule a case management conference by telephone conference call to discuss these and related matters.

## VII. CONCLUSION

Merrill Lynch is entitled to a preliminary injunction for the purpose of preventing arbitration of those claims which clearly are not arbitrable due to the substantive bar to arbitration presented by NASD Code § 15. A permanent injunction will issue concerning these claims upon final disposition of all outstanding matters.

Pursuant to *Hartmann* and *Hofmann*, Merrill Lynch is entitled to analysis of whether the remaining claims arise from events or occurrences which took place during the six-year period prior to the filing of Masland's statement of claim. Under *Hofmann*, an evidentiary hearing is necessary for this determination. The initial determination is "whether the parties intended to submit disputes over the operative occurrence or event, and/or when it occurred, to arbitration." A conference of counsel regarding how evidence relevant to this issue shall be presented to the court will be scheduled. Any further matters will be scheduled thereafter.

An appropriate order and preliminary injunction shall issue.

## ORDER AND PRELIMINARY INJUNCTION

For the reasons stated in the accompanying memorandum, it is ordered that:

1. Plaintiff's motion (record document no. 2) for a preliminary injunction is granted, and all proceedings related to the statement of claim filed by defendant on October 7, 1994 (filed to No. 94–03754), before National Association of Securities Dealers, Inc., shall be held in abeyance pending further order of this court.

2. To the extent plaintiff's motion seeks permanent injunctive relief, the motion is denied, such relief being appropriate as final relief in this action.

3. The court will plan to conduct an evidentiary hearing on the following issue: Did the parties intend to submit disputes over what are the relevant occurrences or events, and/or when they took place, to arbitration?

4. A case management conference will be held by telephone conference call on Tuesday, March 28, 1995, at 9:00 a.m., to discuss the manner of presenting evidence relevant to the issue recited in paragraph 3 of this

order, and all other pertinent matters. Counsel for plaintiff shall initiate the conference call. A further scheduling order will issue upon completion of the conference.