**JOHN HANCOCK DISTRIBUTORS, INC., and John Hancock Mutual Life Insurance Company, Plaintiffs,**

v.

**Michelle and Nicole SAPONARO, Defendants.**

**Civ. A. No. 94–5755.**

United States District Court, E.D. Pennsylvania.

Sept. 28, 1995.

Deductive segment:

Edward C. Mengel, Jr., White and Williams, Philadelphia, PA, for plaintiffs.

Paul C. Madden, Saul, Ewing, Remick & Saul, Philadelphia, PA, for defendants.

## MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

This is an action by plaintiffs John Hancock Distributors, Inc., and John Hancock Mutual Life Insurance Company ("John Hancock") to permanently enjoin an arbitration demanded by defendants Michelle and Nicole Saponaro ("Saponaros"), under the National Association of Security Dealers Code of Arbitration Procedure ("NASD Code"), on the basis that the six claims asserted by the Saponaros in the arbitration proceeding are barred by the limitations period contained in NASD Code § 15.[1] On September 24, 1995, the Court held a hearing

1. This section states that
   No dispute, claim, or controversy shall be eligible for submission to arbitration under this Code where six (6) years have elapsed from the occurrence or event giving rise to the act or dispute, claim or controversy. This section shall not extend applicable statutes of limitations, nor shall it apply to any case which is directed to arbitration by a court of competent jurisdiction.

on plaintiffs' request. For the reasons set forth below, the Saponaros are enjoined from submitting claims number one and number six to arbitration. The Court concludes that the balance of the claims are arbitrable.

## I

Preliminarily, the Court must confirm the existence of jurisdiction and determine the applicable law. Under the federal Arbitration Act, parties may submit to arbitration disputes over transactions involving interstate commerce. 9 U.S.C. §§ 1–2 (1970). Moreover, under the federal Arbitration Act, a party aggrieved by the refusal of another party to an arbitration agreement[2] to arbitrate may seek an order from the district court directing that such arbitration proceed in the manner provided in the agreement. 9 U.S.C. § 4 (1970). Conversely, "a reluctant party [to an agreement to arbitrate] has a right to a judicial determination of his obligation to arbitrate," *PaineWebber v. Hartmann*, 921 F.2d 507, 515 (3d Cir.1990), before it is compelled to participate in an arbitration proceeding. *PaineWebber v. Hofmann*, 984 F.2d 1372, 1382 (affirming district court's order pursuant to § 4 of the federal Arbitration Act enjoining arbitration of a claim which was barred by NASD Code § 15).

Yet, an action to enjoin an arbitration proceeding, like its counterpart action to compel arbitration, must be predicated upon a jurisdictional basis that is independent of the federal Arbitration Act. The Supreme Court has noted that the "Arbitration Act is something of an anomaly in the field of federal-court jurisdiction. It creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate, yet it does not create any independent federal-question jurisdiction...." *Moses H. Cone Memorial Hosp. v. Mercury*

NASD Code of Arbitration Procedure, § 15.

2. In an earlier order, the Court concluded that the Uniform Submission Agreement entered into by the Saponaros and John Hancock in their counterparts with the NASD constituted an agreement to arbitrate this dispute. *See* Court's Order, dated May 1, 1995, Docket No. 12, at footnote 1.

*Constr. Corp.*, 460 U.S. 1, 25 n. 32, 103 S.Ct. 927, 942 n. 32, 74 L.Ed.2d 765 (1983); *see also Nat'l Iranian Oil Co. v. Mapco Int'l, Inc.*, 983 F.2d 485, 493 (3rd Cir.1992) (finding that the federal Arbitration Act does not confer federal-question jurisdiction).

In this case, since it is undisputed that there is diversity of citizenship between the parties and the amount in controversy exceeds $50,000, the Court has jurisdiction to hear this action. *See* 28 U.S.C. § 1332 (1993). Furthermore, since it is also undisputed that the underlying transaction involves interstate commerce, the federal Arbitration Act, and the case law that has evolved thereunder, shall supply the rule of decision. *Moses H. Cone*, 460 U.S. at 24, 103 S.Ct. at 941; *see also Merrill Lynch, Pierce, Fenner & Smith v. Masland*, 878 F.Supp. 710, 712 (M.D.Pa.1995) (finding that district court was proper forum for determining whether a claim is arbitrable and applying federal substantive law of arbitrability).

## II

■ The Third Circuit has established a two-step procedure for determining whether claims submitted to arbitration under the NASD Code by a customer against a securities broker are time-barred. *See Hofmann*, 984 F.2d at 1381 (involving six-year limitations period under NASD Code § 15); *see also Hartmann*, 921 F.2d at 509 (involving six-year limitations period under New York Stock Exchange Department of Arbitration Rule 603). First, the Court must "determine whether the parties intended to submit disputes over the operative occurrence or event, and/or when it occurred," to an arbitrator or to the court. *Hofmann*, 984 F.2d at 1382. Second, assuming that the parties have agreed to submit the issue to the court, the court must determine whether the claims are arbitrable. *Id.* The inquiry is a factual one which envisions "the introduction of extrinsic evidence [at a hearing], if necessary, to de-

termine which of these specific claims are and which are not arbitrable." *Id.*, at 1380.

### (A)

Neither John Hancock nor the Saponaros contend that they had intended to submit to the arbitrator the issue of whether the claims are time-barred by NASD Code § 15. Therefore, the only issue before the Court is whether the dispute is time-barred. *Hartmann*, 921 F.2d at 511.

### (B)

■ John Hancock argues that the Saponaros' claims are without substantive merit. The Third Circuit has instructed, however, that the merits of the underlying dispute must not impact the Court's judgment on arbitrability. "[W]hether [claims are] 'arguable' or not, indeed even if it appears to the court to be frivolous, the merits of an arbitrable claim is [sic] for the arbitrators to decide." *Hofmann*, 984 F.2d at 1381, 1383 (citing *AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 650, 106 S.Ct. 1415, 1419, 89 L.Ed.2d 648 (1986)); *cf. Hartmann*, 921 F.2d at 513 ("Genuine interpretive disputes should be resolved in favor of arbitrability. We simply hold that a compelling case for nonarbitrability should not be trumped by a flicker of interpretative doubt.") Therefore, John Hancock's contention that the Saponaros' claims lack substantive merit is irrelevant in this proceeding.

Next, John Hancock contends that the Saponaros' claims are merely an attempt to assert tolling or discovery arguments in order to evade the six-year limitations period. John Hancock argues that, while the specific incidents alleged by the Saponaros may have occurred within the six-year limitations period, all the claims relate to securities which were originally purchased by the Saponaros outside the six-year limitations period.[3]

---

**3.** The claims were filed on April 15, 1994. Therefore, for any claim to fall within the limitations period, the claim must have arisen within six years prior to filing date of the claims; in other words, no earlier than April 15, 1988.

The time limits imposed by NASD Code § 15 have been held to be substantive and not proce-

dural. *PaineWebber v. Hofmann*, 984 F.2d 1372, 1378–79 (3rd Cir.1993); *see also, PaineWebber v. Hartmann*, 921 F.2d 507, 512–13 (3rd Cir.1990) (finding that NYSE Arbitration Rule 603 which is similar to NASD Code § 15 states an eligibility requirement for arbitration and not merely a statute of limitations). Differences between eligi-

Claims based on purchases of securities which occurred beyond the six-year limitations period are clearly not arbitrable. Conversely, claims based on purchases within the six-year period are. Between these two types of claims exists a category of arbitrable claims which relate to securities purchased by the customer outside the six-year period, but which actually constitute "events" or "occurrences" within the six-year period. For example, a broker's advice to a customer within the six-year period to "hold all stock" purchased outside the limitations period, a brokerage firm's active concealment within the six-year period of the wrongdoing of its brokers which occurred outside that period, and the continuation into the six-year period of a long-term wrongful brokerage-customer relationship begun outside the limitations period may be deemed "events" or "occurrences" that took place within the six-year period, even if the events relate to securities which were initially purchased outside the limitations period. *Hofmann*, 984 F.2d at 1380.

In determining the arbitrability of such claims, the Third Circuit has directed district courts to apply the following rule:

> [T]he court should, as a benchmark, generally accept a party's statement as to what constitutes a cause of action and permit the arbitration of that claim *as long as* the asserted cause of action is not *clearly* a mere tolling or discovery argument. However, when the stated cause of action is patently nothing more than an attempt to toll the six year period, the court must enjoin the arbitration of that claim.

984 F.2d at 1381. The operative presumption is one of arbitrability, and any "doubts should be resolved in favor of coverage [under the arbitration agreement]." *AT & T Technologies*, 475 U.S. at 650, 106 S.Ct. at 1419; *see Hofmann*, 984 F.2d at 1381. Only

when a claim clearly constitutes no more than a tolling or discovery argument may a court enjoin its arbitration. *Hofmann*, at 1382.

The burden of proving that each transaction, occurrence, or event falls within the six-year period is on the Saponaros. *Hofmann*, 984 F.2d at 1383. Moreover, the Saponaros must "list each specific claim or theory of recovery [they] plan[ ] to assert in arbitration." *Id.*, at 1380.

### (C)

■ At the hearing, the Saponaros asserted six claims which they contend arose within the limitations period set forth in NASD Code § 15.[4] The claims revolve around the conduct of Paul G. Schenk, a John Hancock employee and the Saponaros' securities broker, as follows:

1) Schenk's failure to monitor adequately the performance of the Saponaros' investments for their benefit;

2) Schenk's failure to manage prudently the Saponaros' investments for their benefit;

3) Schenk's sale of the Saponaros' securities in order to buy lower-yielding annuities and life insurance policies;

4) Schenk's improper and exclusive purchase of John Hancock products and mutual funds;

5) Schenk's misrepresentation of his intentions regarding the Saponaros' investments; and,

6) John Hancock's failure to supervise Paul Schenk sufficiently and to inform the Saponaros of Schenk's improper conduct.

The Court finds that claims number one and number six cannot be properly submitted to arbitration. The Saponaros presented *no* evidence regarding Schenk's failure to

---

bility requirements for arbitration and statutes of limitations are not implicated in this case. Regardless of whether the six-year limitations period is a substantive or procedural bar, the question before the Court is whether the events or occurrences alleged in this case arose no more than six years prior to the filing of the Saponaros' claims.

4. The claims stated at the hearing differ in some degree from those stated by the Saponaros in their answer to interrogatories and in the Statement of Claim. To the extent that there is a variance between the claims asserted earlier and the proof proffered at the hearing, leave is granted in the absence of prejudice to conform the pleadings to the evidence admitted at the hearing. *See* Fed.R.Civ.P. 15(b).

monitor the investments [5] and Hancock's failure to supervise its employee Schenk. Because there is *no* evidence that claims one and six arose from an occurrence or event within six years from the date of the arbitration demand, the Court concludes that the Saponaros have failed to state a cause of action as to these two claims. *Hofmann*, 984 F.2d at 1382.

■ The Court, however, holds that the balance of the Saponaros' claims, numbers two through five, may be submitted to arbitration. The evidence presented supports each of these theories of recovery with the specificity required in *Hofmann*. 984 F.2d at 1380.

The Saponaros offered evidence of three events or occurrences to support these four claims. The first event involved the 1991 liquidation at Schenk's direction of approximately $200,000 worth of the Saponaros' interest in mutual funds and, in turn, the exclusive purchase of John Hancock annuities and life insurance policies with the proceeds from the sale. In the spring of 1993, the Saponaros were informed by a financial planner that these investments in annuities and life insurance policies were ill-advised.

The liquidation of the Saponaros' interest in the mutual funds and the purchase of John Hancock products occurred after April 15, 1988, the date on which the limitations period began to run, and supports three of the Saponaros' claims: One, the exclusive purchase of John Hancock products with the proceeds of various mutual funds held by the Saponaros supports a claim of failure to manage prudently a client's investments,[6] since an investment strategy consistent with the Saponaros' financial objectives would arguably entail investment in a more diverse array of products. Two, an actual sale of securities within the limitations period is implicated in this transaction. Three, Schenk's direction to invest exclusively in John Hancock products, regardless of the advisability of such investment for someone in the Saponaros' position, supports the fourth claim of John Hancock product exclusivity.

The second event concerned Schenk's statements to Michelle Saponaro regarding the status of her investments in four real estate limited partnerships. Michelle Saponaro testified that, during 1989 and early 1990, she received information in the mail pertaining to various real estate limited partnerships in which she had invested, that she called Schenk to express her concern regarding the soundness of these investments, and that Schenk responded by advising her "to hold on to her investments," "not to worry," "to send everything to his office," "that he would investigate the matter," "that the investments were safe," "that the market would go back up," and that the Saponaros could not sell their interests in the limited partnerships anyway since those interests were not liquid. Michelle Saponaro also testified that, after consulting with her new financial advisor in the spring of 1993, she learned that some of Schenk's statements to her were untrue. Again, the proof offered by the Saponaros concern events which occurred well within the six-year limitations period and which support the Saponaros' claim that Schenk made material misrepresentations to her.

The third event involves the meeting called by Michelle Saponaro sometime in 1990 at the office of Amina Vallochi, Michelle Saponaro's accountant. Present at the meeting were Michelle Saponaro, Schenk, Vallochi, and an attorney, whose name could not be recalled by Michelle Saponaro, but who was there on behalf of Nicole Saponaro. During the course of the meeting, Schenk stated that the limited partnerships in which the Saponaros had invested "were making ten percent [per annum]." Michelle Saponaro testified that, again after consulting her new financial advisor in the spring of 1993, she learned that the statement made by Schenk at the meeting concerning the earnings of the Saponaros' interests in the limited partnerships

---

5. The Saponaros' proof at the hearing was apparently intended to show not that Schenk was negligent or careless, but just the opposite: that he was calculating and deliberate in his fraud of the Saponaros.

6. At this point in the proceedings, the Court must assume the existence of a duty to prudently manage customer investments on the part of John Hancock and Schenk. *Hofmann*, 984 F.2d at 1381. Whether such a duty was owed by John Hancock and Schenk to the Saponaros attached is a question for the arbitrator to decide. *Id.*

were not true. This third event occurred within the requisite six-year period and sustains the Saponaros' claim of misrepresentation by Schenk.[7]

### III

For the foregoing reasons, this Court holds that defendants Michelle and Nicole Saponaro may proceed to arbitration on claims two through five: failure to manage investments prudently, sale of securities to purchase John Hancock annuities and insurance policies, exclusive purchases of Hancock products, and misrepresentation of intent by Schenk. Defendants, however, may not submit to arbitration claims one and six, Schenk's failure to monitor and Hancock's failure to supervise.

An appropriate order will be entered.

### ORDER

AND NOW, this 28th day of September, 1995, after a hearing in which the plaintiffs moved for a permanent injunction enjoining defendants from arbitrating claims before the National Association of Securities Dealers ("NASD"), and for the reasons set forth in the accompanying memorandum, IT IS ORDERED that plaintiffs' motion for a permanent injunction is GRANTED IN PART AND DENIED IN PART.

1. Defendants are ENJOINED from arbitrating claims number one and number six against plaintiffs, and any employees, marketing representatives, and/or registered representatives of the plaintiffs, including Paul G. Schenk.[1]

2. Claims two, three, four, and five[2] shall be permitted to proceed to arbitration based on the following events and occurrences: Claims two, three, and four involve the 1991 liquidation of approximately $200,000 worth of the defendants' interest in mutual funds and the exclusive purchase of John Hancock annuities and life insurance policies with the proceeds from the sale. Claim five involves the statements and representations made by Paul Schenk to Michelle Saponaro during 1989 and 1990 regarding the defendants' investments in four real estate limited partnerships and at the 1990 meeting at the office of Michelle Saponaro's accountant. *See* Memorandum, dated September 28, 1995, at 9–11.

IT IS SO ORDERED.

7. Plaintiffs also contend that the Saponaros are barred from arbitration pertaining to the Equitec limited partnership due to a pending class action where this very claim is being litigated. Section 12 of the NASD Code of Arbitration Procedure permits only the parties who have opted out of a class action to submit their claims to arbitration.

Absent any evidence regarding whether the Saponaros' claims fall within the scope of the class action or whether the Saponaros have opted out of this class action, this Court will not find that the Equitec limited partnership aspect of the claim is barred. Therefore, nothing in this memorandum and accompanying order shall prevent the arbitrator from considering this aspect of the claim. If it is shown at the arbitration hearing, however, that the Saponaros' claim is within the scope of the claims being litigated in the class action and that the Saponaros have not opted out of the class action, the arbitrator may duly find that this aspect of the Saponaros' claim is barred.

1. Claim one alleges Schenk's failure to adequately monitor defendants' investments. Claim six alleges Hancock's failure to supervise its employee, Paul G. Schenk.

2. Claim two alleges that Schenk failed to prudently manage defendants' investments for their benefit. Claim three alleges that Schenk sold defendants' securities in order to purchase lower-yielding annuities and life insurance policies. Claim four alleges that Schenk purchased exclusively John Hancock products. Claim five alleges that Schenk misrepresented his investment intentions to the defendants.